Halloran v Kiri (2019 NY Slip Op 04769)





Halloran v Kiri


2019 NY Slip Op 04769


Decided on June 13, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 13, 2019

Friedman, J.P., Richter, Tom, Gesmer, Moulton, JJ.


9616 21037/15E

[*1]Patricia Halloran, etc., Plaintiff-Respondent,
v
Ajay N. Kiri, M.D., et al., Defendants-Appellants, Farmingdale Wellness Center, et al., Defendants.


C. Cardillo, P.C., Brooklyn (Paul C. Bierman of counsel), for appellants.
Jacoby & Jacoby, Medford (Susan Ulrich of counsel), for respondent.



Order, Supreme Court, Bronx County (Mary Ann Brigantti, J.), entered April 20, 2018, which denied defendants-appellants' motion for summary judgment, unanimously affirmed, without costs.
On October 6, 2013, the 26-year-old decedent, Kristen Hurley, was found unresponsive in her bedroom by her grandmother. An autopsy report from the Nassau County Office of the Medical Examiner revealed that decedent had accidentally died from acute intoxication by the combined effect of fentanyl, heroin, oxycodone, and alprazolam.
Decedent was involved in a motor vehicle accident in 2007, in which she injured her left shoulder. Decedent underwent surgery for her shoulder in June 2008 and December 2009. After that surgery, decedent's care was transferred to pain management physicians. Decedent was released from treatment by those physicians after she insisted on narcotic analgesics before the prescribed time. Decedent returned to her treating orthopaedic surgeon in August 2010 and repeatedly requested a narcotic analgesic prescription, but the surgeon denied her request and told her that the goal was to stop the medications completely.
Decedent underwent a third shoulder surgery on November 2010 and was given a one-month supply of narcotic analgesics. Later that month, decedent admitted to her orthopaedic surgeon that she was taking her medications more frequently and in greater quantities than prescribed. Decedent requested additional narcotic analgesics, but the surgeon denied her request and later informed her that he would not prescribe any further narcotic pain medication.
Decedent was treated by two other doctors before she was seen by defendant Ajay Kiri, M.D. One physician diagnosed decedent with opioid dependence, noted recent track marks, told decedent that she was an addict, and offered to prescribe decedent Suboxone, but she refused. The other physician prescribed oxycodone, but discharged decedent from his care when she tested positive for cocaine use.
Decedent first presented to Dr. Kiri on August 31, 2012, with a chief complaint of chronic pain. Decedent reported that she had been seeing her orthopaedic surgeon for pain medication, but was looking for a more local doctor. Dr. Kiri refilled decedent's high-dose oxycodone prescription, but discontinued the OxyContin and prescribed fentanyl patches. Dr. Kiri stopped the fentanyl, and restarted the high-dose OxyContin after decedent complained of a rash. Dr. Kiri's handwritten notes from decedent's December 28, 2012 visit stated: "Discuss need to lower medication. Patient actively asked for more." Dr. Kiri later began prescribing decedent Xanax (alprazolam) for anxiety. Dr. Kiri never lowered decedent's prescriptions for opioids below the original level and never contacted her orthopaedic surgeon. Dr. Kiri continued treating the decedent, and prescribing opioids and Xanax, until her death.
Plaintiff, on behalf of decedent, sued defendants-appellants, asserting causes of action for [*2]wrongful death, medical malpractice, negligence, and lack of informed consent. Plaintiff's theory of liability is that Dr. Kiri prescribed decedent opioids despite the fact that her medical records showed illicit drug use and opioid seeking behavior and, as a result, Dr. Kiri enhanced and encouraged decedent's behavior until she accidentally overdosed. Defendants-appellants moved for summary judgment dismissing the complaint on the ground that, as relevant here, decedent's death was not proximately caused by Dr. Kiri's acts or omissions. The motion court denied defendants-appellants' motion.
This is not one of the rare cases in which proximate cause can be found lacking as a matter of law (Hain v Jamison, 28 NY3d 524, 530 [2016]). The opinions of appellants' experts were not probative as to causation because they are conclusory and contradicted by the Medical Examiner's report (Diaz v New York Downtown Hosp., 99 NY2d 542, 544 [2002]). Moreover, appellants' experts failed to show that they were qualified to opine on the cause of decedent's death (Steinberg v Lenox Hill Hosp., 148 AD3d 612, 613 [1st Dept 2017]).
Appellants' argument that Dr. Kiri's acts or omissions could not qualify as a proximate cause as a matter of law because decedent used illicit drugs or evinced drug seeking behavior before Dr. Kiri's treatment misses the point. Plaintiff's theory of liability is that Dr. Kiri's prescription of high-dose opioid pain killers for more than a year, despite the fact that her medical records showed drug use and drug seeking behavior, escalated, enhanced, or encouraged that behavior. An accidental overdose is not an unforeseeable result of prescribing, or over-prescribing, opioid painkillers to a patient who displays signs of addiction (see Levitt v Lenox Hill Hosp., 184 AD2d 427, 429 [1st Dept 1992]). More specifically, here, decedent's procurement and use of illicit drugs were not unforeseeable in light of the indicia of addiction or misuse noted in her medical records. Because decedent's use of illicit drugs was not unforeseeable, her drug use was not an intervening cause and did not amount to a separate act of negligence that independently caused her death.
Appellants' policy argument is unpersuasive. A determination that proximate cause must be decided by a jury in this case does not set any requirement that every doctor in the state has to become its own detective agency prior to administering a prescription for pain medication. Causation will be determined in connection with whether Dr. Kiri's treatment of decedent fell below the applicable standard of care, which is not at issue on this appeal. Moreover, this argument again misses the point. Plaintiff is not arguing that Dr. Kiri should have acquired decedent's medical records before he prescribed any pain medication to her. Rather, plaintiff is arguing that, at some point during his 14-month treatment of decedent, Dr. Kiri should have collected her recent medical records or, at least, contacted her treating orthopaedist to create a treatment plan. This presents an issue for the jury.
Appellants failed to make a prima facie showing that they obtained decedent's informed consent (Public Health Law § 2805—d[1],[3]; Orphan v Pilnik, 66 AD3d 543, 544 [1st Dept 2009], affd 15 NY3d 907 [2010]). Appellants' experts' opinions were conclusory because they did not set forth what reasonably foreseeable risks should have been disclosed by Dr. Kiri to decedent regarding his prescriptions of opioids or Xanax. The statements of appellant's experts that decedent knew of the consequences of combining her prescriptions with alcohol and illicit drugs and that she was fully advised of the dangers of opioids are not supported by the record. [*3]Moreover, there is no evidence or testimony that Dr. Kiri informed decedent of the risks of taking Xanax.
We have considered the remaining contentions and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 13, 2019
CLERK